SARINA PAL, an individual, and           CASE NO:
JAYA WILLIAMS, an individual;

       Plaintiffs,

v.

1350 S. DIXIE, LLC d/b/a THE RESIDENCES AT THESIS,
a Delaware limited liability company, GABLES RESIDENTIAL
SERVICES, INC., a Texas corporation, NOLAN REYNOLDS
INTERNATIONAL, LLC, a Delaware limited liability company,
and DOES 1 through 25, inclusive,

       Defendants

_____/

## COMPLAINT

Plaintiffs, SARINA PAL ("Ms. PAL") and JAYA WILLIAMS ("Ms. WILLIAMS") (collectively, the "PLAINTIFFS"), by and through undersigned counsel do hereby sue Defendants, 1350 S. DIXIE, LLC d/b/a THE RESIDENCES AT THESIS ("THESIS"), GABLES RESIDENTIAL SERVICES, INC ("GABLES RESIDENTIAL"), NOLAN REYONDS INTERNATIONAL, LLC ("NRINTERNATIONAL"), and DOES 1 through 25, (collectively, the "DEFENDANTS"), pursuant to claims for breach of contract, negligence, and violations of Florida's Landlord-Tenant statute. In addition, and/or the alternative, the PLAINTIFFS seek relief under a theory of unjust enrichment.

In support thereof, the PLAINTFFS state as follows:

## OVERVIEW

1. This is a suit for Breach of Contract, Negligence, and Violations of Florida's Landlord-

Tenant Statute. In addition, and/or in the alternative, the PLAINTIFFS seeks relief under an Unjust Enrichment theory.

## THE PARTIES

2. Ms. PAL is an individual, and was at all times material hereto a resident and citizen of Arapahoe County, Colorado. Ms. PAL is the mother of Ms. WILLIAMS.

3. Ms. WILLIAMS is an individual, and was at all times material hereto a resident and citizen of Arapahoe County, Colorado. At all times material hereto, Ms. WILLIAMS was a student at the University of Miami in Coral Gables, Florida, and she is the daughter of Ms. PAL.

4. THESIS is a Delaware limited liability company that is organized and existing under the laws of the State of Delaware, and whose principal place of business in Miami-Dade County, Florida. THESIS is a citizen of the State of Florida because all of its members are citizens of the State of Florida. At all relevant times herein, THESIS conducted business in the State of Florida, and THESIS promoted itself as a safe and reliable housing option for students at the University of Miami.

5. GABLES RESIDENTIAL is a Texas corporation that is organized and existing under the laws of the State of Texas, and whose principal place of business is in Atlanta, Georgia. GABLES RESIDENTIAL is a citizen of the states of Texas and Georgia. At all relevant times herein, GABLES RESIDENTIAL conducted business in the State of Florida. On information and belief, GABLES RESIDENTIAL owns, controls and/or operates THESIS.

6. NRINTERNATIONAL is a Delaware limited liability company that is organized and existing under the laws of the State of Delaware, and whose principal place of business in Miami-Dade County, Florida. NRINTERNATIONAL is a citizen of the states of Minnesota and Florida as all of its members are citizens of either Minnesota or Florida. At all relevant times herein,

NRINTERNATIONAL conducted business in the State of Florida.  On information and belief, NRINTERNATIONAL owns, controls and/or operates THESIS.

7.  The full extent of the facts linking the fictitiously designated Defendants with the cause(s) of actions herein is unknown to the PLAINTIFFS.  Further the true names and capacities, whether individual, corporate, associate, plural or partnership, or otherwise, of Defendants DOES 1 through 25, inclusive, are unknown to the PLAINTIFFS.  The PLAINTIFFS therefore sue Defendants by such fictitious names.  The PLAINTIFFS are informed and believe, and thereupon allege, that each of the Defendants designated herein as a DOE is negligently, wantonly, recklessly, tortuously, intentionally and/or unlawfully responsible in some manner for the events and happenings hereinafter referred to, and negligently, wantonly, recklessly, tortuously, intentionally and/or unlawfully, proximately caused injuries and damages to the PLAINTIFFS, as hereinafter alleged.  The PLAINTIFFS will ask leave of this Court to amend this Complaint to show said Defendants' names and capacities once the same have been ascertained.

**JURISDICTION AND VENUE**

8.  This is an action for monetary damages.

9.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because the amount in controversy of this suit exceeds $75,000.00, exclusive of interests and costs, and it is between citizens of different states.

10. Venue is proper in this District pursuant to §1391, in that all Defendants conduct business and have substantial contacts with the State of Florida, the state where this District is located.

11. Venue is also proper pursuant to §1391, in that a substantial part of the events or omissions giving rise to these claims occurred in this District.

## COMMON ALLEGATIONS

12. On or around June 17, 2020, the PLAINTIFFS entered into a leasing agreement (the "Lease") with THESIS, which was a brand-new housing residence and hotel in Coral Gables, Florida.

13. Pursuant to the terms of the Lease, the PLAINTIFFS were to pay a monthly rent in the amount of $2,340.00, plus an additional $150 per month for parking, beginning on or around July 28, 2020, in exchange for THESIS providing the PLAINTIFFS with a residential unit, specifically, Apartment 0922 (the "Apartment").

14. The Lease was originally for one (1) year and was set to expire on July 27, 2021.

15. The PLAINTIFFS intended for the Apartment to serve as Ms. WILLIAMS' residence for at least the next two (2) years, or the remainder of her time as a student at the University of Miami (the "University") as THESIS is in close proximity to the University and promotes itself as being a student-friendly housing option for students at the University.

16. On or around July 28, 2020, the PLAINTIFFS moved Ms. WILLIAMS' belongings from the Red Road Commons residences ("Red Road") along with brand new furniture that they had purchased for the Apartment into the Apartment with the assistance of paid movers.

17. The PLAINTIFFS were the first tenants to ever live in the Apartment, which first became available in the summer of 2020.

18. On or around September 5, 2020, Ms. PAL came to Miami to visit her daughter, Ms. WILLIAMS, and to stay with her in the Apartment.

19. On or around this date, Ms. PAL discovered a stain near the laundry area in the Apartment and she noticed that the Apartment's smoke detector was constantly beeping.

20. Ms. PAL thought that the stain was odd, but she did not initially give it much second

thought; however, she did call THESIS' maintenance staff to address the beeping smoke detector.

21. A member of THESIS' maintenance staff, named Pedro, eventually came to the Apartment to address the issues with the smoke detector and advised the PLAINTIFFS that he would be back to replace the batter(ies) in the Apartment's smoke detector.

22. A few days later, on or around September 7, 2020, Pedro returned to the Apartment and upon his arrival, Ms. PAL advised Pedro of the stain near the laundry area, and she pointed it out to him.

23. Pedro touched the stain and told Ms. PAL that the stain was not moist, but that he would "spray it."

24. Notwithstanding the fact that Pedro never advised either of the PLAINTIFFS what "spraying" the stain would do, neither Pedro, nor any other member of THESIS' staff ever came to spray the stain.

25. On or around September 18, 2020, to the shock, horror, and disgust of the PLAINTIFFS, a large mushroom sprouted from the wall where the stain was discovered.

26. The PLAINTIFFS immediately informed the concierge desk at THESIS in order to inform THESIS' employees of their discovery of the mushroom, and to seek immediate assistance.

27. On or around September 19, 2020, employees from THESIS arrived at the Apartment, and broke down the wall in which the mushroom sprouted from in order to determine the cause/source of the mushroom.

28. When the employees from THESIS arrived at the Apartment it was around 9:00 am EST and Ms. PAL was working and Ms. WILLIAMS, who due to the COVID-19 pandemic was required to engage in her classes at the University remotely, was studying. Throughout this day

various persons entered in and out of the Apartment, and this disrupted the PLAINTIFFS who were working and studying inside the Apartment.

29. After the employees from THESIS broke down the wall, mold was discovered in, and among other areas, the closet and the baseboard of the Apartment.

30. On or around September 21 or 22, 2020, employees from THESIS returned to the Apartment in order to seal the wall that had been torn down.

31. The PLAINTIFFS were advised by THESIS that "everything" had been cleaned up and fixed, despite the fact that THESIS had failed to conduct any air quality or mold tests.

32. Ms. PAL requested that such air quality and mold tests be performed, to which THESIS initially scoffed at her request; however, after Ms. PAL persisted that such tests be conducted, as she was concerned about her daughter, Ms. WILLIAMS, and other students from the University having similar issues, THESIS finally agreed to perform such tests.

33. At or around this same day, Ms. PAL advised Pedro that she had been experiencing headaches and dizziness and that Ms. WILLIAMS had developed a rash.

34. On or around September 23, 2020, THESIS retained, on information and belief, Checkmark Inspections, Inc ('Checkmark") to test the Apartment for mold.

35. After Checkmark performed its mold test in the Apartment, the PLAINTIFFS discovered that there was still mold in the Apartment.

36. Based upon this discovery, and Ms. PAL's requests that the PLAINTIFFS be provided with accommodations due to their reactions to the mold, the PLAINTIFFS were eventually advised by Pedro on or around September 25, 2020, that they could move into the adjacent hotel (the "Hotel") that was owned, controlled and/or operated by the DEFENDANTS while the Apartment was being cleaned and the mold remediated.

37. The PLAINTIFFS moved into the Hotel on or around September 28, 2020. Because this was a work/school day, this resulted in further inconvenience for the PLAINTIFFS. The Hotel also lacked a formal kitchen, microwave, or many of the other essential appliances that reasonable persons would expect to have in their residence to enable them to cook and feed themselves.

38. As a direct result of this the PLAINTIFFS attempted to order room service to feed themselves; however, they were initially advised by THESIS that they could not order room service, but that they could go back to the Apartment if they wished to cook. The PLAINTIFFS protested this as it was the mold in and from the Apartment that was causing their injuries and damages, and which was why they were staying in the Hotel in the first place. Eventually THESIS obliged the PLAINTIFFS' request for room service; however, the PLAINTIFFS were forced to exhaust tremendous sums of money on room service, eating out and on take-out since they could not cook.

39. THESIS initially advised the PLAINTIFFS that they would only need to be in the Hotel for three (3) to five (5) days while the Apartment was being cleaned and remediated. This would later be determined to be a gross understatement.

40. At or around this same time, the PLAINTIFFS inquired about having their clothing, bedding and various other personal belongings (the "Personal Belongings") cleaned based upon the Personal Belongings' exposure to the mold in the Apartment.

41. THESIS advised the PLAINTIFFS that they would handle the washing and cleaning of the Personal Belongings on behalf of the PLAINTIFFS due to the Personal Belongings' exposure to the mold in the Apartment.

42. THESIS failed to advise the PLAINTIFFS as to when they would collect the Personal

7

Belongings, and therefore when THESIS' agents/employees came to collect the Personal Belongings this led to another work/school day interruption for the PLAINTIFFS.

43. Ultimately, the PLAINTIFFS provided THESIS with numerous bags that were filled with the Personal Belongings, which THESIS was supposed to get cleaned on their behalf.

44. THESIS once again retained Checkmark, this time to perform a post-remediation verification. On or around October 1, 2020, Checkmark issued a notice indicating that there was "no mold growth identified" and that "no further remediation [was] recommended."

45. Notwithstanding this notice, THESIS continued to engage in maintenance work in the Apartment related to the mold, and the Apartment was thus still uninhabitable, and the PLAINTIFFS were still missing significant amounts of the Personal Belongings, which were purportedly being cleaned.

46. It should also be noted that while the various maintenance and cleaning crews entered the Apartment, many of the maintenance and cleaning crew members did not wear gloves or masks, in direct violation of THESIS' own COVID-19 protocols, and one person even opened the PLAINTIFFS' refrigerator and stored her own personal drink inside the PLAINTIFFS' refrigerator without any regard for the risks associated with spread of the COVID-19 virus.

47. On or around October 6, 2020, THESIS' community manager, Claudio Tuohy ("Tuohy") informed Ms. PAL that the Apartment would "be completely ready tomorrow [at] noon 10/7/2020", and the PLAINTIFFS were expected to move back in to the Apartment in the middle of their respective work and school day.

48. Tuohy further advised Ms. PAL on behalf of the PLAINTIFFS that the PLAINTIFFS would be expected to vacate the Hotel on October 8, 2020, or otherwise they would incur additional charges, and that the cleaning of the Personal Belongings was taking "longer than anticipated."

8

49. Ms. PAL inquired of Tuohy how the PLAINTIFFS could reasonably be expected to return to the Apartment when they lacked bedding, clean clothing and many of the Personal Belongings. In addition, THESIS was still conducting maintenance and repairs that generated significant noise in/at the Apartment.

50. At this time, the maintenance and cleaning had not even been fully completed, and THESIS continued its cleaning and maintenance of the Apartment well after October 8, 2020, which resulted in the PLAINTIFFS remaining in the Hotel until after October 8, 2020.

51. Even though the Apartment had not been returned to a fully habitable condition, the PLAINTIFFS were required to incur significant out-of-pocket expenses based upon their continued stay at the Hotel.

52. On October 21, 2020, the PLAINTIFFS received another load of the Personal Belongings from THESIS; however, many of the Personal Belongings had yet to still be returned to the PLAINTIFFS.

53. As late as November 6, 2020, THESIS was still cleaning and performing tests and maintenance in the Apartment.

54. On or around November 12, 2020, Ms. PAL retained the services of Miami Mold Specialists (the "Mold Specialists"), at a cost to herself, to conduct a mold assessment report and to provide remediation recommendations.

55. The Mold Specialists determined that mold was still heavily prevalent in the Apartment on or around November 12, 2020, and they found evidence of mold growth throughout the master bedroom vent, throughout the coils of the central A/C unit, and throughout the blower of the central A/C unit.

56. The Mold Specialists recommended that a swift and precise remediation be performed in the Apartment and advised the PLAINTIFFS that a proper remediation would costs them approximately $1,750.00.

57. After having been displaced from the Apartment since September 28, 2020, and having concerns about the habitability of the Apartment and their health and well-being, the PLAINTIFFS performed an official move-out inspection with employees from THESIS on or around January 2, 2021.

58. Based upon the presence of mold in the Apartment and the PLAINTIFFS' exposure to such mold, the PLAINTIFFS have proximately suffered significant bodily injuries and suffering, mental anguish, loss of capacity for the enjoyment of life, and medical and other expenses at no fault of their own.  These losses are either permanent or continuing and the PLAINTIFFS will continue to suffer these losses in the future.

### COUNT I
### BREACH OF CONTRACT
(The PLAINTIFFS against the DEFENDANTS)

59. The PLAINTIFFS hereby repeat, reallege, and incorporate by reference each and every allegation hereinabove and incorporate the same as though fully set forth herein.

60. This is a count for Breach of Contract.

61. The PLAINTIFFS entered into the Lease on or around June 17, 2020.

62. The Lease provided that the PLAINTIFFS would pay the DEFENDANTS $2,340.00 dollars per month in exchange for being able to live in the Apartment.

63. Implied in the lease was the fact that the Apartment would be habitable at and during the entire pendency of the Lease.

64. The PLAINTIFFS performed all of their obligations under the terms of the Lease.

65. The presence of the mushroom and mold in the Apartment made the Apartment uninhabitable and thus the DEFENDANTS breached this implied warranty of habitability in the Lease, and thus the Lease itself.

66. As a direct and proximate result of the DEFENDANTS' breach of the Lease, the PLAINTIFFS have incurred damages and they are entitled to recover the damages that they incurred as a result of the DEFENDANTS' breach, as well as prejudgment interest to partially compensate them for the loss of use of their funds, plus additional damages to be determined at trial, that are associated with the DEFENDANTS' breach of the Lease.

**WHEREFORE,** for the reasons set forth herein, the PLAINTFFS request that this Court award compensatory damages, including but not limited to, the amounts paid in rent pursuant to the Lease; an amount equal to the amount that the PLAINTIFFS paid in rent as liquidated damages; prejudgment and post judgment interests; and attorney's fees and costs in their favor and against the DEFENDANTS as a proximate result of the DEFENDANTS' failure to fulfill their obligations under the Lease, and such further relief this Court deems to be just and proper.

<u>**COUNT II**</u>
<u>**NEGLIGENCE**</u>
(The PLAINTIFFS against the DEFENDANTS)

67. The PLAINTIFFS hereby repeat, reallege and incorporate by reference each and every allegation contained hereinabove and incorporate the same as though fully set forth herein.

68. This is a count for Negligence.

69. The DEFENDANTS, as the owners and operators of the Apartment, owed the PLAINTIFFS a duty to ensure that the Apartment remained in a habitable condition during the entire pendency of the Lease and in conformity with the laws of the State of Florida.

70. The DEFENDANTS breached this duty to the PLAINTIFFS by failing to keep the

Apartment in a safe and habitable condition in violation of the laws of the State of Florida.

71. As a direct and foreseeable result of the DEFENDANTS breach of this duty, the PLAINTIFFS suffered severe damages.

72. The PLAINTIFFS' damages can be directly attributed to the DEFENDANTS' breach of this duty.

73. Due to the DEFENDANTS' breach of their duty, the PLAINTIFFS have sustained damages of a physical, emotional and pecuniary nature in an amount to be proven at trial in excess of the jurisdictional limits

### COUNT III
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(The PLAINTIFFS against the DEFENDANTS)

74. The PLAINTIFFS hereby repeat, reallege and incorporate by reference each and every allegation contained hereinabove and incorporate the same as though fully set forth herein.

75. This is a count for Negligent Infliction of Emotional Distress.

76. The DEFENDANTS, as the owners and operators of the Apartment, owed the PLAINTIFFS a duty to ensure that the Apartment remained in a habitable condition during the entire pendency of the Lease and in conformity with the laws of the State of Florida.

77. The DEFENDANTS breached this duty to the PLAINTIFFS by failing to keep the Apartment in a safe and habitable condition in violation of the laws of the State of Florida.

78. As a direct and foreseeable result of the DEFENDANTS breach of this duty, the PLAINTIFFS suffered severe damages.

79. The PLAINTIFFS' damages can be directly attributed to the DEFENDANTS' breach of this duty.

80. Due to the DEFENDANTS' breach of their duty, the PLAINTIFFS have sustained

damages of a physical, emotional and pecuniary nature in an amount to be proven at trial in excess of the jurisdictional limits.

<u>COUNT III</u>
<u>**VIOLATIONS OF FLORIDA'S LANDLORD-TENANT STATUTES**</u>
(The PLAINTIFFS against the DEFENDANTS)

81. The PLAINTIFFS hereby repeat, reallege, and incorporate by reference each and every allegation hereinabove and incorporate the same as though fully set forth herein.

82. This is a count for Violations of Florida's Landlord-Tenant Statutes.

83. Florida Statute § 83.51 provides in pertinent part that:

*(1) The landlord at all times during the tenancy shall:*

*(a)   Comply with the requirements of applicable building, housing, and health codes; or*

*(b)   Where there are no applicable building, housing, or health codes,    maintain the roofs, windows, doors, floors, steps, porches, exterior    walls, foundations, and all other structural components in good repair   and capable of resisting normal forces and loads and the plumbing in    reasonable working condition.*

84. As set forth above, the PLAINTIFFS have been injured by the DEFENDANTS' violation(s) of Florida Statute § 83.51, *et seq.*

85. The DEFENDANTS failed to maintain the Apartment in a manner that complied with Florida Statute(s) § 83.51, *et seq.*, and were thus in violation of Florida's Landlord-Tenant statutes by having the presence of the mushroom and mold in the Apartment.

86. As a direct and proximate result of the DEFENDANTS' violation of the Florida Landlord-Tenant statutes, the PLAINTIFFS have incurred damages of a physical, emotional and pecuniary nature in an amount to be proven at trial in excess of the jurisdictional limits

<u>COUNT IV</u>
<u>**UNJUST ENRICHMENT**</u>
(The PLAINTIFFS against the DEFENDANTS)

87. The PLAINTIFFS hereby repeat, reallege and incorporate by reference each and every

13

allegation contained hereinabove and incorporate the same as though fully set forth herein.

88. This is a count for Unjust Enrichment.

89. The PLAINTIFFS provided money to the DEFENDANTS in exchange for an apartment in/at THESIS.

90. In providing rent to the DEFENDANTS, the PLAINTIFFS conferred a benefit upon the DEFENDANTS.

91. The DEFENDANTS are aware of and had knowledge of the benefit they received from the rent monies that the PLAINTIFFS provided to them.

92. The DEFENDANTS accepted the rent payments voluntarily and knowingly; however, the PLAINTIFFS were deprived of access and/or benefit to the Apartment after September 28, 2020, and the Apartment was uninhabitable since the discovery of the mushroom and mold on or around September 18, 2020.

93. The circumstances are such that it would be inequitable for the DEFENDANTS to retain the benefits provided by the PLAINTIFFS, without providing any benefit to them as agreed.

**WHEREFORE,** for the reasons set forth herein, the PLAINTIFFS requests this Court to award damages against the DEFENDANTS and each of them as follows: (a) general and special damages in an amount to be proven at trial in excess of Five Hundred Fifty Thousand dollars ($550,000.00); (b) the costs of rent paid by the PLAINTIFFS since September 1, 2020; (c) the costs of this action; (d) their attorney's fees; and (e) any other and further legal and equitable relief that this Court deems fair and just.

### **DEMAND FOR JURY TRIAL**

**WHEREFORE**, the PLAINTIFFS demand a trial by jury for all issues so triable.

### **RESERVATION OF RIGHTS**

The PLAINTIFFS reserve the right to further amend this Complaint, upon completion of their investigation and discovery, to assert any additional claims for relief against the DEFENDANTS, or other parties, as may be warranted under the circumstances and as allowed by law. The PLAINTIFFS further reserve the right to seek and have punitive damages assessed against the DEFENDANTS.

Dated: September 15, 2022

s/Andrew Williams
**THE WILLIAMS LAW GROUP**
Andrew Williams, Esq.
*Attorney for Plaintiffs*
20 Island Ave
Suite 801
Miami, Florida 33139
Telephone: (253) 970-1683
FL Bar No. 0111817
Email:  Andrew@TheWilliamsLG.com
Secondary Email: WilliamsLawFlorida@gmail.com