# EXHIBIT

# "B"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

SARINA PAL, an individual, and
JAYA WILLIAMS, an individual,

          Plaintiffs,

v.

1350 S. DIXIE, LLC d/b/a THE RESIDENCES AT
THESIS, a Delaware limited liability company,
GABLES RESIDENTIAL SERVICES, INC., a
Texas corporation, and DOES 1 through 25, inclusive,

          Defendants

_____/

CASE NO: 1:22-cv-22944-BB

## **AMENDED COMPLAINT**

Plaintiffs, SARINA PAL ("Ms. PAL") and JAYA WILLIAMS ("Ms. WILLIAMS") (collectively, the "PLAINTIFFS"), by and through undersigned counsel do hereby sue Defendants, 1350 S. DIXIE, LLC d/b/a THE RESIDENCES AT THESIS ("THESIS"), and GABLES RESIDENTIAL SERVICES, INC ("GABLES RESIDENTIAL"), (collectively, the "DEFENDANTS"), pursuant to claims for breach of contract, negligence, and violations of Florida's Landlord-Tenant statute. In addition, and/or the alternative, the PLAINTIFFS seek relief under a theory of unjust enrichment.

In support thereof, the PLAINTFFS state as follows:

## **OVERVIEW**

1. This is a suit for Breach of Contract, Negligence, and Violations of Florida's Landlord-Tenant Statute. In addition, and/or in the alternative, the PLAINTIFFS seeks relief under an Unjust Enrichment theory.

## THE PARTIES

2. Ms. PAL is an individual, and was at all times material hereto a resident and citizen of Arapahoe County, Colorado.  Ms. PAL is the mother of Ms. WILLIAMS.

3. Ms. WILLIAMS is an individual, and was at all times material hereto a resident and citizen of Arapahoe County, Colorado. At all times material hereto, Ms. WILLIAMS was a student at the University of Miami in Coral Gables, Florida, and she is the daughter of Ms. PAL.

4. THESIS is a Delaware limited liability company that is organized and existing under the laws of the State of Delaware, and whose principal place of business is in Miami-Dade County, Florida.  THESIS is a citizen of the State of Florida because all of its members are citizens of the State of Florida and/or the State of Delaware.  On information and belief, THESIS' sole member is 1350 S. Dixie Mezz Borrower, LLC ("Mezz Borrower").  Mezz Borrower is a citizen of the State of Delaware and the State of Florida.  On information and belief, Mezz Borrower's sole member is 1350 S. Dixie Holdings, LLC ("Holdings").  Holdings is a citizen of the State of Delaware and the State of Florida.  On information and belief, Holdings sole member is NPI South Dixie, LLC ("NPI"). NPI is a citizen of the State of Delaware and the State of Florida.  On information and belief, NPI's sole member is NPI Coral Gables, LLC ("NPI Coral Gables").  NPI Coral Gables is a citizen of the State of Delaware and the State of Florida.  On information and belief, Coral Gables' sole member is Brent M. Reynolds ("Reynolds").  Reynolds is a citizen of the State of Florida, and he maintains his domicile in the State of Florida where he resides on Miami-Dade County, Florida, with his wife Daniella Reynolds. Furthermore, and most importantly, none of the members of THESIS are citizens of the State of Colorado, which is the state where the Plaintiffs are citizens and therefore complete diversity exists.  At all relevant times

herein, THESIS conducted business in the State of Florida, and THESIS promoted itself as a safe and reliable housing option for students at the University of Miami.

5. GABLES RESIDENTIAL is a Texas corporation that is organized and existing under the laws of the State of Texas, and whose principal place of business is in Atlanta, Georgia. GABLES RESIDENTIAL is a citizen of the states of Texas and Georgia. At all relevant times herein, GABLES RESIDENTIAL conducted business in the State of Florida. On information and belief, GABLES RESIDENTIAL maintains an ownership interest in and/or operates THESIS. GABLES RESIDENTIAL also employed agents and/or employees who "professional managed" THESIS at all times material hereto.

## JURISDICTION AND VENUE

6. This is an action for monetary damages.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy of this suit exceeds $75,000.00, exclusive of interests and costs, and it is between citizens of different states.

8. Venue is proper in this District pursuant to §1391, in that all Defendants conduct business and have substantial contacts with the State of Florida, the state where this District is located.

9. Venue is also proper pursuant to §1391, in that a substantial part of the events or omissions giving rise to these claims occurred in this District.

## COMMON ALLEGATIONS

10. On or around June 17, 2020, the PLAINTIFFS entered into a leasing agreement (the "Lease") with THESIS, which was in the process of opening a new apartment residence and an adjacent hotel in Coral Gables, Florida.

11. Pursuant to the terms of the Lease, the PLAINTIFFS were to pay a monthly rent in the

3

amount of $2,340.00, plus an additional $150.00 per month for parking, beginning on or around July 28, 2020, in exchange for THESIS providing the PLAINTIFFS with a residential unit, and specifically, Apartment 0922 (the "Apartment").

12. At the time, the Apartment was a brand-new apartment, and the PLAINTIFFS were set to be, and were, the first tenants to live in the Apartment.

13. The Apartment was "professionally managed" by GABLES RESIDENTIAL, and the rules, regulations and policies of the Apartment were governed by GABLES RESIDENTIAL.

14. Originally, the Lease was set for one (1) year, and it was scheduled to expire on July 27, 2021.

15. The PLAINTIFFS intended for the Apartment to serve as Ms. WILLIAMS' residence for at least two (2) years, or the remainder of her then-time as a student at the University of Miami (the "University") since the Apartment was in close proximity to the University and it was promoted by THESIS and GABLES RESIDENTIAL as a student-friendly housing option for students at the University.

16. In fact, THESIS has maintained booths at the University in which it has promoted itself as a safe and reliable housing option for students of the University, and it even maintains offices for staff from the University.

17. On or around July 28, 2020, the PLAINTIFFS moved Ms. WILLIAMS' belongings from the Red Road Commons residences ("Red Road") along with the brand-new furniture that they purchased for the Apartment into the Apartment with the assistance of paid movers.

18. As previously stated, the PLAINTIFFS were the first tenants to live in the Apartment, which first became available for tenants in the summer of 2020.

19. On or around September 5, 2020, Ms. PAL came to Miami to visit her daughter, Ms.

WILLIAMS, and she stayed with Ms. Williams in the Apartment.

20. On or around this date, Ms. PAL discovered a stain near the laundry area in the Apartment and Ms. PAL noticed that the Apartment's smoke detector was constantly beeping.

21. Ms. PAL thought that the stain was odd, but she did not initially give it much second thought; however, Ms. PAL did call the Apartment's maintenance staff to address the beeping smoke detector.

22. On information and belief, the Apartment's maintenance staff consisted of members (agents and employees) of both THESIS and GABLES RESIDENTIAL.

23. A member of the Apartment's maintenance staff, named Pedro, eventually came to the Apartment to address the issues with the smoke detector.

24. Pedro advised the PLAINTIFFS that he would return to the Apartment to replace the batter(ies) in the Apartment's smoke detector.

25. A few days later, on or around September 7, 2020, Pedro returned to the Apartment and upon his arrival, Ms. PAL advised Pedro of the stain near the laundry area, and she pointed the stain out directly to him.

26. Pedro touched the stain and told Ms. PAL that the stain was not moist, but that he would "spray it."

27. Notwithstanding the fact that Pedro never advised either of the PLAINTIFFS what "spraying" the stain would do, neither Pedro, nor any other member of Apartment's maintenance staff ever came to spray the stain.

28. On or around September 18, 2020, to the shock, horror, and disgust of the PLAINTIFFS, a large mushroom sprouted from the wall where the stain was discovered.

29. The PLAINTIFFS immediately informed the Apartment's concierge desk, which on

5

information and belief, was operated by employees of GABLES RESIDENTIAL, that a mushroom was growing inside the Apartment, and the PLANTIFFS sought immediate assistance.

30. On or around September 19, 2020, employees from THESIS and/or GABLES RESIDENTIAL arrived at the Apartment and broke down the wall in the Apartment in which the mushroom sprouted from in order to determine the cause/source of the mushroom.

31. When the employees arrived at the Apartment it was around 9:00 am EST; Ms. PAL was working and Ms. WILLIAMS, who due to the COVID-19 pandemic was required to engage in her classes at the University remotely, was studying. Throughout this day various agents and/or employees of THESIS and/or GABLES RESIDENTIAL (the "Employees") entered in and out of the Apartment, which disrupted the PLAINTIFFS who were working and studying, respectively, inside the Apartment.

32. After the Employees broke down the wall, mold was discovered in, and among other areas, the closet and the baseboard of the Apartment.

33. On or around September 21 or 22, 2020, the Employees returned to the Apartment in order to seal the wall that had been torn down.

34. The PLAINTIFFS were advised by agents and employees of THESIS and GABLES RESIDENTIAL that "everything" had been cleaned and fixed, despite the fact that neither THESIS, nor GABLES RESIDENTIAL conducted any air quality or mold tests.

35. Ms. PAL requested that such air quality and mold tests be performed, to which THESIS and/or GABLES RESIDENTIAL initially scoffed at her request; however, after Ms. PAL persisted that such tests be conducted, as she was concerned about the health and well-being of her daughter, Ms. WILLIAMS, as well as other students from the University, who may have had similar issues, it was finally agreed that such tests would be performed in the Apartment.

6

36. At or around this same day, Ms. PAL advised Pedro that she had been experiencing headaches and dizziness and that Ms. WILLIAMS had developed a rash due to the mold and the mushroom.

37. On or around September 23, 2020, THESIS and/or GABLES RESIDENTIAL retained, on information and belief, Checkmark Inspections, Inc ('Checkmark") to test the Apartment for mold.

38. Even after Checkmark performed its mold test in the Apartment, the PLAINTIFFS discovered that there was still mold inside the Apartment.

39. Based upon this discovery, and Ms. PAL's requests that the PLAINTIFFS be provided with accommodations due to their adverse reactions to the mold, the PLAINTIFFS were eventually advised by Pedro, on or around September 25, 2020, that they could move into the adjacent hotel (the "Hotel") that was owned, controlled and/or operated by THESIS and/or GABLES RESIDENTIAL while the Apartment was being cleaned and the mold remediated.

40. The PLAINTIFFS moved into the Hotel on or around September 28, 2020.  Because this was a work/school day, this resulted in further inconvenience for the PLAINTIFFS.  The Hotel also lacked a formal kitchen, a microwave, or many of the other essential appliances that reasonable persons would expect to find in their residence in order to cook and to feed themselves.

41. As a direct result of this lack of appliances, the PLAINTIFFS attempted to order room service to feed themselves; however, they were initially advised that they could not order room service.  The PLAINTIFFS however were informed that they could go back to the Apartment, which was being remediated for mold, in order to cook if they wished to cook.  The PLAINTIFFS objected to this as it was the mold in and from the Apartment that was causing their injuries and damages, and which was why they were staying at the Hotel in the first place.  Eventually THESIS and/or GABLES RESIDENTIAL relented to the PLAINTIFFS' request for room service;

7

however, as a result of their displacement due to the mold in the Apartment, the PLAINTIFFS were forced to exhaust tremendous sums of money on room service, eating out, and on take-out since they could not cook at the Hotel.

42. The PLAINTIFFS were initially advised that they would only need to be in the Hotel for three (3) to five (5) days while the Apartment was being cleaned and remediated; however, this later proved to be a gross understatement.

43. At or around this same time, the PLAINTIFFS inquired about having their clothing, Bedding, and various other personal belongings (the "Personal Belongings") cleaned based upon the Personal Belongings' exposure to the mold in the Apartment.

44. The PLAINTIFFS were advised by agents and/or employees of THESIS and/or GABLES RESIDENTIAL that THESIS and/or GABLES RESIDENTIAL would wash and clean the Personal Belongings on behalf of the PLAINTIFFS, at no costs to them, due to the fact that the Personal Belongings were exposed to the mold inside the Apartment.

45. Neither THESIS, nor GABLES RESIDENTIAL, however advised the PLAINTIFFS as to when they would collect the Personal Belongings to clean, and therefore when the Employees collected the Personal Belongings this led to another work/school day interruption for the PLAINTIFFS, which amounted to further damages and inconvenience.

46. Ultimately, the PLAINTIFFS provided THESIS and/or GABLES RESIDENTIAL with numerous bags that were filled with the Personal Belongings that were supposed to be cleaned on the PLAINTIFFS' behalf.

47. THESIS and/or GABLES RESIDENTIAL again retained Checkmark, however, this time

8

it was so that Checkmark could perform a post-remediation verification of the Apartment. On or around October 1, 2020, Checkmark issued a notice indicating that there was "no mold growth identified" and that "no further remediation [was] recommended."

48. Notwithstanding this notice, the Employees continued to engage in maintenance work at and inside the Apartment related to the mold, and the Apartment was therefore still uninhabitable. Furthermore, the PLAINTIFFS were still missing significant amounts of the Personal Belongings, which were purportedly still being cleaned.

49. It should also be noted that while the Employees entered the Apartment, many of the Employees did not wear gloves or masks, which was in direct violation of THESIS' and/or GABLES RESIDENTIALS then-COVID-19 protocols, and one of the Employees that entered the Apartment even opened the PLAINTIFFS' refrigerator and stored a personal drink inside the PLAINTIFFS' refrigerator without any regard for the risks that were associated with spread of the COVID-19 virus.

50. On or around October 6, 2020, GABLES RESIDENTIALS' community manager, Claudio Tuohy ("Tuohy") informed Ms. PAL that the Apartment would "be completely ready tomorrow [at] noon 10/7/2020", and Tuohy advised the PLAINTIFFS that they were expected to move back into the Apartment in the middle of their respective work and school days.

51. Tuohy further advised Ms. PAL that the PLAINTIFFS would be expected to vacate the Hotel on October 8, 2020, or they would otherwise incur additional charges, and that the cleaning of the Personal Belongings was taking "longer than anticipated."

52. Ms. PAL inquired of Tuohy how the PLAINTIFFS could reasonably be expected to return to the Apartment when the PLAINTIFFS lacked bedding, clean clothing and many other items that were in the Personal Belongings that had been given to the Employees for cleaning. In addition,

9

the Employees were still conducting maintenance and/or repairs inside the Apartment at this time, which generated significant noise in/at the Apartment.

53. When Tuohy advised Ms. Pal of the October 8, 2020, date in which the PLAINTIFFS were expected to vacate the Hotel, the maintenance and cleaning of the Apartment was not completed, and the Employees actually continued cleaning the Apartment until well after October 8, 2020. Ultimately, this resulted in the PLAINTIFFS remaining at the Hotel until after October 8, 2020.

54. Because the Apartment was not in a habitable condition, the PLAINTIFFS were forced to incur significant out-of-pocket expenses based upon the fact that they had to continue to stay at the Hotel, which occurred at no fault of their own.

55. On October 21, 2020, the PLAINTIFFS received another batch of items from the Personal Belongings; however, many of the Personal Belongings still had yet to be returned to the PLAINTIFFS.

56. THESIS and/or GABLES RESIDENTIAL continued cleaning and performing tests and maintenance inside the Apartment through at least November 6, 2020.

57. On or around November 12, 2020, Ms. PAL retained the services of Miami Mold Specialists (the "Mold Specialists"), at a cost to herself.

58. The Mold Specialists were retained by Ms. PAL in order to conduct a mold assessment report and to provide remediation recommendations concerning the Apartment.

59. The Mold Specialists determined that mold was still heavily prevalent inside the Apartment, and they found evidence of mold growth throughout the master bedroom vent, throughout the coils of the central A/C unit, and throughout the blower of the central A/C unit.

60. The Mold Specialists recommended that a swift and precise remediation be performed

inside the Apartment and they advised the PLAINTIFFS that a proper remediation would costs them approximately $1,750.00.

61. After having been displaced from the Apartment since September 28, 2020, and still having concerns about the habitability of the Apartment, their health and their well-being, the PLAINTIFFS performed an official move-out inspection with employees and/or agents from THESIS and/or GABLES RESIDENTIAL on or around January 2, 2021.

62. Based upon the presence of mold in the Apartment and the PLAINTIFFS' exposure to such mold, which entered their bodies through mold spores and caused or aggravated their injuries and symptoms, the PLAINTIFFS have proximately suffered significant bodily injuries and suffering, mental anguish, loss of capacity for the enjoyment of life, medical, and other expenses at no fault of their own.  These losses are either permanent or continuing and the PLAINTIFFS will continue to suffer these losses in the future.

**COUNT I**
**BREACH OF CONTRACT**
(The PLAINTIFFS against THESIS)

63. The PLAINTIFFS hereby repeat, reallege, and incorporate by reference each and every allegation hereinabove and incorporate the same as though fully set forth herein.

64. This is a count for Breach of Contract.

65. The PLAINTIFFS entered into the Lease on or around June 17, 2020.

66. The Lease provided that the PLAINTIFFS would pay THESIS the amount of $2,340.00 dollars per month in exchange for being able to live in the Apartment.

67. Implied in the lease was the fact that the Apartment would be habitable at and during the entire pendency of the Lease.

68. The PLAINTIFFS performed all of their obligations under the terms of the Lease.

11

69. The presence of the mushroom and the mold in the Apartment made the Apartment uninhabitable, which led to the displacement of the PLAINTIFFS, and thus THESIS breached the implied warranty of habitability in the Lease, and thus the Lease itself.

70. As a direct and proximate result of THESIS' breach of the Lease, the PLAINTIFFS have incurred damages and they are entitled to recover the damages that they incurred as a result of THESIS' breach, as well as prejudgment interest to partially compensate them for the loss of use of their funds, plus additional damages to be determined at trial, that are associated with THESIS' breach of the Lease.

**WHEREFORE,** for the reasons set forth herein, the PLAINTFFS request that this Court award compensatory damages, including but not limited to, the amounts paid by the PLAINTIFFS as rent pursuant to the Lease; an amount equal to the amount that the PLAINTIFFS paid in rent as liquidated damages; prejudgment and post judgment interests; and attorney's fees and costs in their favor and against THESIS as a proximate result of THESIS' failure to fulfill its obligations under the terms of the Lease, and such further relief this Court deems to be just and proper.

**COUNT II**
**NEGLIGENCE**
(The PLAINTIFFS against THESIS)

71. The PLAINTIFFS hereby repeat, reallege and incorporate by reference each and every allegation contained hereinabove and incorporate the same as though fully set forth herein.

72. This is a count for Negligence.

73. THESIS, as the owner of the Apartment, owed the PLAINTIFFS a duty to ensure that the Apartment remained in a habitable condition during the entire pendency of the term of the Lease and in conformity with the laws of the State of Florida.

74. THESIS breached this duty to the PLAINTIFFS by failing to keep the Apartment in a safe

12

and/or habitable condition in violation of the laws of the State of Florida.

75. As a direct and foreseeable result of THESIS' breach of this duty, the PLAINTIFFS suffered severe damages.

76. The PLAINTIFFS' damages can be directly attributed to THESIS' breach of its duty.

77. Due to THESIS' breach of its duty, the PLAINTIFFS have sustained damages of a physical, emotional and pecuniary nature in an amount to be proven at trial in excess of the jurisdictional limits.

**COUNT III**
**NEGLIGENCE**
(The PLAINTIFFS against GABLES RESIDENTIAL)

78. The PLAINTIFFS hereby repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 70, above, and incorporate the same as though fully set forth herein.

79. This is a count for Negligence.

80. GABLES RESIDENTIAL, as the operator and manager of the Apartment, owed the PLAINTIFFS a duty to ensure that the Apartment was, and remained, in a habitable condition during the entire pendency of the Lease and in conformity with the laws of the State of Florida.

81. GABLES RESIDENTIAL breached its duty to the PLAINTIFFS by failing to keep the Apartment in a safe and habitable condition in violation of the laws of the State of Florida.

82. As a direct and foreseeable result of GABLES RESIDENTIAL's breaches of its duty, the PLAINTIFFS suffered severe damages.

83. The PLAINTIFFS' damages can be directly attributed to GABLES RESIDENTIAL's breaches of its duty.

84. Due to GABLES RESIDENTIAL's breaches of its duty, the PLAINTIFFS have sustained

13

damages of a physical, emotional and pecuniary nature in an amount to be proven at trial in excess of the jurisdictional limits.

<b>COUNT IV<br>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</b><br>(The PLAINTIFFS against THESIS)

85. The PLAINTIFFS hereby repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 77 and incorporate the same as though fully set forth herein.

86. This is a count for Negligent Infliction of Emotional Distress.

87. THESIS, as the owner of the Apartment, owed the PLAINTIFFS a duty to ensure that the Apartment remained in a habitable condition during the entire pendency of the Lease, and in conformity with the laws of the State of Florida.

88. THESIS breached its duty to the PLAINTIFFS by failing to keep the Apartment in a safe and/or habitable condition in violation of the laws of the State of Florida.

89. As a direct and foreseeable result of THESIS' breaches of its duty, the PLAINTIFFS suffered severe damages.

90. The PLAINTIFFS' damages can be directly attributed to THESIS' breaches of its duty.

91. As a direct and proximate result of THESIS' breaches of its duty, the PLAINTIFFS have become direct victims, and the PLAINTIFFS have sustained damages of a physical, emotional and pecuniary nature in an amount to be proven at trial in excess of the jurisdictional limits.

<b>COUNT V<br>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</b><br>(The PLAINTIFFS against GABLES RESIDENTIAL)

92. The PLAINTIFFS hereby repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 70, and Paragraphs 78 through 84, and incorporate the same as though fully set forth herein.

14

93. This is a count for Negligent Infliction of Emotional Distress.

94. GABLES RESIDENTIAL, as the operator and manager of the Apartment, owed the PLAINTIFFS a duty to ensure that the Apartment remained in a habitable condition during the entire pendency of the Lease, and that it remained in conformity with the laws of the State of Florida.

95. GABLES RESIDENTIAL breached its duty to the PLAINTIFFS by failing to keep the Apartment in a safe and/or habitable condition in violation of the laws of the State of Florida.

96. As a direct and foreseeable result of GABLES RESIDENTIAL's breaches of its duty, the PLAINTIFFS have suffered severe damages.

97. The PLAINTIFFS' damages can be directly attributed to GABLES RESIDENTIAL's breaches of its duty.

98. As a direct and proximate result of GABLES RESIDENTIAL's breaches of its duty, the PLAINTIFFS have become direct victims, and the PLAINTIFFS have sustained damages of a physical, emotional and pecuniary nature in an amount to be proven at trial in excess of the jurisdictional limits.

### COUNT VI
### VIOLATIONS OF FLORIDA'S LANDLORD-TENANT STATUTES
(The PLAINTIFFS against THESIS)

99. The PLAINTIFFS hereby repeat, reallege, and incorporate by reference each and every allegation in Paragraphs 1 through 77, and Paragraphs 85 through 91, and incorporate the same as though fully set forth herein.

100. This is a count for Violations of Florida's Landlord-Tenant Statutes.

101. Florida Statute § 83.51 provides in pertinent part that:

*(1) The landlord at all times during the tenancy shall:*

*(a)   Comply with the requirements of applicable building, housing, and health codes; or*

*(b)   Where there are no applicable building, housing, or health codes, maintain the roofs, windows, doors, floors, steps, porches, exterior walls, foundations, and all other structural components in good repair and capable of resisting normal forces and loads and the plumbing in reasonable working condition.*

102.     As set forth above, the PLAINTIFFS have been injured by THESIS' violation(s) of Florida Statute § 83.51, *et seq.*

103.     THESIS failed to maintain the Apartment in a manner that complied with Florida Statute(s) § 83.51, *et seq.*, and thus THESIS was in violation of Florida's Landlord-Tenant statutes by having the presence of the excessive mold in the Apartment which led to growth of the mushroom inside the Apartment.

104.     The emergence of the mushroom is *per se* evidence that THESIS, as the owner or landlord of the Apartment, failed to maintain the roofs, windows, doors, floors, exterior, etc.

105.     As a direct and proximate result of THESIS' violations of the Florida Landlord-Tenant statutes, the PLAINTIFFS have incurred damages of a physical, emotional and pecuniary nature in an amount to be proven at trial in excess of the jurisdictional limits.

## COUNT VII
## VIOLATIONS OF FLORIDA'S LANDLORD-TENANT STATUTES
(The PLAINTIFFS against GABLES RESIDENTIAL)

106.     The PLAINTIFFS hereby repeat, reallege, and incorporate by reference each and every allegation in Paragraphs 1 through 70, Paragraphs 78 through 84, and Paragraphs 92 through 98,  and incorporate the same as though fully set forth herein.

107.     This is a count for Violations of Florida's Landlord-Tenant Statutes.

108.     Florida Statute § 83.51 provides in pertinent part that:

*(1) The landlord at all times during the tenancy shall:*

*(a)   Comply with the requirements of applicable building, housing, and health codes; or*

16

(b)   *Where there are no applicable building, housing, or health codes, maintain the roofs, windows, doors, floors, steps, porches, exterior walls, foundations, and all other structural components in good repair and capable of resisting normal forces and loads and the plumbing in reasonable working condition.*

109.     As set forth above, the PLAINTIFFS have been injured by GABLES RESIDENTIAL's violation(s) of Florida Statute § 83.51, *et seq.* since GABLES RESIDENTIAL acted as the de facto agent of the owner, THESIS, and it used its employees such as Tuohy, to instruct and to direct the Plaintiffs in regards to their issues in and at the Apartment.

110.     GABLES RESIDENTIAL failed to maintain the Apartment in a manner that complied with Florida Statute(s) § 83.51, *et seq.*, and thus GABLES RESIDENTIAL was in violation of Florida's Landlord-Tenant statutes by having the presence of the excessive mold in the Apartment which led to growth of the mushroom inside the Apartment.

111.     As a direct and proximate result of GABLES RESIDENTIAL's violation of the Florida Landlord-Tenant statutes, the PLAINTIFFS have incurred damages of a physical, emotional and pecuniary nature in an amount to be proven at trial in excess of the jurisdictional limits.

**COUNT XIII**
**UNJUST ENRICHMENT**
(The PLAINTIFFS against GABLES RESIDENTIAL)

112.     The PLAINTIFFS hereby repeat, reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 62 and incorporate the same as though fully set forth herein.

113.     This is a count for Unjust Enrichment.

114.     The PLAINTIFFS provided money to THESIS as rent in exchange for the right to live at/in the Apartment.

17

115.    In providing rent to THESIS, the PLAINTIFFS also conferred a benefit upon GABLES RESIDENTIAL, who, on information and belief, received portions of the PLAINTIFFS rent as payment for its agents, employees and/or the services that GABLES RESIDENTIAL provided to the PLAINTIFFS at the Apartment.

116.    GABLES RESIDENTIAL is aware of and had knowledge of the benefit that it received from the PLAINTIFFS.

117.    GABLES RESIDENTIAL received and accepted the payments/benefits that it received from the PLAINTIFFS voluntarily and knowingly; however, the PLAINTIFFS were deprived of access to and/or the benefit of the Apartment after September 28, 2020, despite paying rent, as the Apartment was uninhabitable since the discovery of the mushroom and the mold on or around September 18, 2020.

118.    The circumstances are such that it would be inequitable for GABLES RESIDENTIAL to retain the benefits provided to it by the PLAINTIFFS, without providing any benefit to the PLAINTIFFS.

## PRAYER FOR RELIEF

**WHEREFORE,** for the reasons set forth herein, the PLAINTIFFS requests this Court to award damages against each of the DEFENDANTS as follows: (a) general and special damages in an amount to be proven at trial in excess of Five Hundred Fifty Thousand dollars ($550,000.00); (b) the costs of rent paid by the PLAINTIFFS pursuant to the terms of the Lease since September 1, 2020; (c) the costs of this action; (d) their attorney's fees; and (e) any other and further legal and equitable relief that this Court deems fair and just.

## DEMAND FOR JURY TRIAL

**WHEREFORE**, the PLAINTIFFS demand a trial by jury for all issues so triable.

18

## <u>RESERVATION OF RIGHTS</u>

The PLAINTIFFS reserve the right to further amend this Complaint, upon completion of their investigation and discovery, to assert any additional claims for relief against the DEFENDANTS, or other parties, as may be warranted under the circumstances and as allowed by law.  The PLAINTIFFS further reserve the right to seek and have punitive damages assessed against the DEFENDANTS.


Dated: March 14, 2023

s/Andrew Williams
 **THE WILLIAMS LAW GROUP**
Andrew Williams, Esq.
*Attorney for Plaintiffs*
9600 S. Dixie Hwy
Suite 1311
Miami, Florida 33156
Telephone: (305) 916-1122
FL Bar No. 0111817
Email:  Andrew@TheWilliamsLG.com
Secondary Email: WilliamsLawFlorida@gmail.com

19